UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------x

LUQMAN ABDUL-RAHMAN,

                Plaintiff,                              Memorandum and Order
                                                          10 Civ. 2778

     - against -

THE CITY OF NEW YORK, et al.

                Defendants.

-------------------------------------------------------x

GLASSER, United States District Judge:


        Plaintiff Luqman Abdul-Rahman ("plaintiff" or "Rahman") brought this action against Police Officer Christopher Goodwin, Captain James Fulton, Sergeant Ronald Smith, Detective Gary Gillespie, Police Officer Richard Baez, Detective Jeremy DeMarco, Police Officer Ariel Ortiz, Police Officer Alexander Melandez ("the individual defendants"), and the City of New York (collectively, "defendants"), pursuant to the Civil Rights Act of 1866, 42 U.S.C. §§ 1983 & 1985(3), and New York State law, alleging false arrest, excessive force, illegal search and seizure, retaliation, malicious prosecution, denial of fair trial, conspiracy, negligence, and intentional and negligent infliction of emotional distress. Before the Court is defendants' motion for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c). For the following reasons, defendants' motion should be GRANTED.

## BACKGROUND

        The following facts are undisputed and drawn from the complaint and documents of which the Court may take judicial notice. On the morning of May 20, 2008, members of the Brooklyn South Narcotics Division, including Police Officer Christopher Goodwin

("Officer Goodwin"), went to a United Parcel Service ("UPS") station in Brooklyn, New York with a canine unit to search for a package alleged to contain narcotics. Am. Compl. ¶ 17. The canine positively identified a cardboard box addressed to Jason Hilton, 1745 President Street, Apartment 6D, Brooklyn, New York ("Apartment 6D"). Officers seized the package and brought it to the 71st Precinct where it was examined and found to contain between ten and fifteen pounds of marihuana. Id. ¶ 18.

At 12:15 p.m. on May 20, 2008, Officer Goodwin appeared before the Supreme Court of the State of New York to obtain a search warrant for Apartment 6D. Am. Compl. ¶ 19; Declaration of John S. Schowengerdt dated August 12, 2011 ("Schowengerdt Decl."), Ex. G . A warrant was subsequently issued, authorizing the search of Apartment 6D and of any persons entering or exiting the premises during the warrant execution. Schowengerdt Decl. Ex. H.

At 12:32 p.m., Captain James Fulton ("Capt. Fulton"), dressed as a UPS worker, delivered the package containing marihuana to Apartment 6D on the sixth floor. An occupant of the apartment, Jeffrey Francois ("Francois"), opened the door, identified himself as the addressee, Jason Hilton, and accepted the package. Am. Compl. ¶ 21; Schowengerdt Decl. Ex. L at 250. Rahman was inside Apartment 6D at the time of the delivery. Id. at 249-50.

Approximately three minutes after Capt. Fulton made the delivery, a man named Castillo exited a nearby apartment and entered Apartment 6D. Schowengerdt Decl. Ex. L at 249. Shortly after Castillo entered the apartment, Rahman left the apartment carrying the box of marihuana, ran up to the seventh floor landing near the roof, dropped the box, and then returned to the sixth floor. Id. at 250, 262. Police did not see

2

Rahman carrying the box up the stairs but a security camera, later obtained and viewed by police, recorded that event. Id. 261-262; Schowengerdt Decl. Ex. I (Criminal Complaint for docket #2008KN037814).

Police did, however, see Rahman return to the apartment and Mr. Castillo then exited the apartment. The two men were intercepted by Detective Gary Gillespie ("Det. Gillespie') coming up the staircase from the fifth floor. Schowengerdt Decl. Ex. L at 250-51, 261. With firearm drawn, Det. Gillespie arrested Rahman and ordered him to lie down on the ground. Am. Compl. ¶ 22; Schowengerdt Decl. Ex. L at 251, 261-63. Tight handcuffs were placed on Rahman, causing "numbness and marks to his wrists." Id. ¶¶ 30, 32. Det. Gillespie and other officers entered the apartment, where they encountered a number of occupants who they placed under arrest. Am. Compl. ¶ 26. They searched the entire apartment, seizing drug paraphernalia. Id. ¶ 28. The package of marihuana was later recovered where Rahman left it. Schowengerdt Decl. Ex I. At approximately 1:30 p.m., Officer Goodwin arrived at the apartment with the search warrant. Am. Compl. ¶ 29.

Rahman was brought to the 71st Precinct, where he was processed, and then taken to Brooklyn Central Booking where he was charged with criminal possession of marihuana in the first, second, third, fourth, and fifth degrees, and unlawful possession of marihuana. Id. ¶¶ 35-38; Schowengerdt Decl. Ex I. A grand jury indicted Rahman on July 19, 2008. Am. Compl. ¶ 39; Schowengerdt Decl. Ex. K (Grand Jury Indictment No. 5111/2008). Rahman was tried in the state court and acquitted on June 30, 2009. Am. Compl. ¶ 45; see People of the State of New York v. Rahman Lugman, No. 5111-2008 (N.Y. June 29, 2009).

3

**DISCUSSION**

**I.    Standard of Review**

Before it can determine the appropriate standard of review to be applied to the defendants' motion, the Court must decide whether to treat it as one for judgment on the pleadings pursuant to Rule 12(c) or a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  If, on a motion for judgment on the pleadings, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Fed.R. Civ. P. 12(d).  As indicated by the word 'must,' "the conversion of a Rule [12(c)] motion into one for summary judgment under Rule 56 when the court considers matters outside the pleadings is 'strictly enforce[d]' and 'mandatory.'" Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 155 (2d Cir. 2006) (quoting Amaker v. Weiner, 179 F.3d 48, 50 (2d Cir. 1999); Goldman v. Belden, 754 F.2d 1059, 1066 (2d Cir. 1985)).

Plaintiff, taking note of the fact that the documents attached in support of defendants' motion are not attached as exhibits to the Amended Complaint, argues they "have erroneously submitted a motion for summary judgment in the guise of a motion to dismiss on the pleadings."  Pl.'s Mem. at 10.  Plaintiff urges the Court to deny the motion as premature because he has not yet had an opportunity to complete discovery. Defendants assert that he is wrong.

 In deciding a motion for judgment on the pleadings, the court considers "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case."  Roberts v. Babkiewicz, 582 F.3d 418, 419 (2d Cir. 2009).  "A complaint is deemed to include any

4

written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004) (citations omitted) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)). The court may also look to public records for limited purposes. Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) ("If the court takes judicial notice, it does so in order to determine what statements they contained . . . not for the truth of the matters asserted.").

In this case, the Court need not convert the defendants' motion to one for summary judgment. All the facts recounted previously or set forth below that are not alleged in the Amended Complaint are undisputed and drawn from materials of which both parties had notice. See Chambers, 282 F.3d at 153 ("[G]enerally, the harm to the plaintiff when a court considers material extraneous to a complaint is the lack of notice that the material may be considered."). Defendants have submitted a number of public records from plaintiff's criminal file as exhibits. See Schowengerdt Decl. Ex. G, H, I, J, & K. The search warrant, criminal complaint, and indictment are clearly appropriate for consideration in deciding a Rule 12(c) motion because plaintiff had possession of these documents, incorporated them by reference in the Complaint, and their authenticity is not in question. See Am. Compl. ¶¶ 19, 29 (Warrant); ¶ 38 (Criminal Complaint); ¶ 39 (Indictment).

Defendants also submitted transcripts from plaintiff's trial, consisting of the sworn testimony of Capt. Fulton and plaintiff, who testified in his own defense. See Schowengerdt Decl. Ex. F & L. Among other things, plaintiff's testimony provided an account of his actions between the time that the police delivered marihuana to the

apartment and the time police arrested him.  For the reasons discussed below, this testimony leads inescapably to the conclusion that police had probable cause to arrest, search, and cause plaintiff to be indicted.  This testimony is directly relevant to the Complaint's allegations and plaintiff was plainly aware of his prior testimony when drafting the Amended Complaint.  Notably, plaintiff has not disavowed his prior testimony nor has he offered a contradictory set of facts.  Plaintiff argues that this testimony may not be considered without converting the motion into one for summary judgment.  He is wrong.  His testimony is admissible as party admissions made in public records whose authenticity is not in dispute.  See, e.g., Munno v. Town of Orangetown, 391 F. Supp. 2d 263, 269 (S.D.N.Y. 2005) (taking judicial notice, without converting motion to one for summary judgment, of plaintiff's affidavits and pleadings in a related state court action where the documents contradicted the factual allegations contained in the complaint); Harris v. New York State Dep't of Health, 202 F. Supp. 2d 143, 173 (S.D.N.Y. 2002) ("[T]he Court may take judicial notice of admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings that contradict the party's factual assertions in a subsequent action."); 5-Star Mgmt., Inc. v. Rogers, 940 F. Supp. 512, 518 (E.D.N.Y. 1996) (taking judicial notice, without converting motion to one for summary judgment, of plaintiff's admission during testimony in another proceeding).  The plain purpose of the exception is to "prevent[ ] plaintiffs from generating complaints invulnerable to Rule 12(b)(6) simply by clever drafting."  Global Network Comm'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006); see also Cortec Indus., Inc. v. Sum Holding, L.P., 949 F. 2d 42, 44 (2d Cir. 1991).

In 5-Star Management, the court observed that judicial notice generally does not extend to the truth of the matter asserted in public records.  940 F. Supp. at 519.  However, the court found exceptional circumstances permitted it to consider the plaintiff's prior testimony in state court for its truth because the plaintiff made a critical admission that bore substantially upon the legal sufficiency of the complaint and the plaintiff, despite an opportunity to respond, had not contested the defendants' factual characterization of those admissions.  That observation is plainly applicable here and the Court may consider plaintiff's testimony in the prior state court proceedings in deciding this motion.  However, the testimony of Capt. Fulton does not fall within that narrow exception and, along with the report prepared by Detective Charles Fico, Schowengerdt Decl. Ex. D, and the memo book prepared by Officer Goodwin, id. Ex. E, it is excluded as inappropriate for consideration on a 12(c) motion.

A.  Rule 12(c)

Federal Rule of Civil Procedure 12(c) provides, in pertinent part, that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001).  At the outset, it must be noted that a complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.

Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).  "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted).  Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u>  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" <u>Iqbal</u>, 129 S. Ct. at 1950 (2009) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

The Court accepts as true all factual allegations contained in the Amended Complaint and draws all reasonable inferences in the plaintiff's favor.  <u>Ziemba v. Wezner</u>, 366 F.3d 161, 163 (2d Cir. 2004).  Judgment on the pleadings "is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." <u>Sellers v. M.C. Floor Crafters Inc.</u>, 842 F.2d 639, 642 (2d Cir. 1988).

## II.     The Civil Rights Act

Section 1983 governs civil rights actions against a person acting under color of state law who "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." <u>See</u> <u>Patterson v. Cnty. of Oneida</u>, 375 F.3d 206, 225 (2d Cir. 2004).  "The statute itself is not a source of substantive rights but merely provides 'a method for vindicating federal rights

elsewhere conferred.'" Fowlkes v. Rodriguez, 584 F. Supp. 2d 561, 572 (E.D.N.Y. 2008)

(quoting Baker v. McCollan, 443 U.S. 137, 144 n.3, 99 S. Ct. 2689, 61 L. Ed. 2d 433

(1979)).  Here, plaintiff claims a violation of his First, Fourth, Fifth, Sixth, and

Fourteenth Amendment rights.  New York law provides the elements of the relevant

causes of action.  See, e.g., Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995)

(false arrest); Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994) (malicious prosecution);

Humphrey v. Landers, 344 F. App'x 686, 688 (2d Cir. 2009) (excessive force).

### A. First Claim: False Arrest and Unlawful Search

#### 1.  False Arrest

Plaintiff alleges that the individual defendants violated his Fourth Amendment

rights because they arrested him without probable cause.  Under New York law, the

elements of a false arrest claim are "(1) the defendant intended to confine [the plaintiff],

(2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the

confinement and (4) the confinement was not otherwise privileged." Singer, 63 F.3d at

118.  Only the fourth element, which embraces probable cause, is in dispute.

The existence of probable cause to arrest "'is a complete defense to an action for

false arrest,' whether that action is brought under state law or under Section 1983."

Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (citing Broughton v. State, 37 N.Y.2d

451, 458, 373 N.Y.S.2d 87, 335 N.E.2d 310 (1975).  Probable cause is "a fluid concept . . .

not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462

U.S. 213, 232, 103 S. Ct. 2317 (1983).  It exists, "when the officers have knowledge of, or

reasonably trustworthy information as to, facts and circumstances that are sufficient to

warrant a person of reasonable caution in the belief that an offense has been or is being

committed by the person to be arrested." Manganiello v. City of New York, 612 F.3d 149, 161 (2d Cir. 2010). What is required is a "probability or substantial chance of criminal activity, not an actual showing of such activity." United States v. Valentine, 539 F.3d 88, 94 (2d cir. 2008) (citation omitted).

In weighing whether officers had probable cause, the Court considers the totality of the circumstances, Gates, 462 U.S. at 233, and makes an objective rather than subjective inquiry as to "the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of arrest." Devenpeck v. Alford, 543 U.S. 146, 152-53, 125 S. Ct. 588, 160 L. Ed. 2d 537 (2004). Where there is more than one officer cooperating in the investigation, the knowledge of each officer is presumed to be shared by all. See Celestin v. City of New York, 581 F. Supp. 2d 420,430 (E.D.N.Y. 2008).

The fact that the officers are later shown to be mistaken, or that the defendant is ultimately acquitted, does not alter the analysis. DeFillippo, 443 U.S. at 35 ("The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest.") Probable cause may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers. Walczyk v. Rio, 496 F.3d 139, 157 (2d Cir. 2007); Weyant, 101 F.3d at 852.

Taking all of these factors into account, the Court finds that the officers had probable cause to arrest plaintiff. Plaintiff alleges he was arrested as soon as the defendant police officers entered the apartment. See Am. Compl. ¶ 25 ("Once the individual defendants entered the apartment, plaintiff was not free to disregard their questions, or walk way [sic] or leave the scene."). It is undisputed that at the time of the

10

arrest, officers knew that ten to fifteen pounds of marihuana had been shipped from Arizona to the apartment.  The quantity of drugs was consistent with distribution, not personal use, and it was reasonable for officers to believe that the occupants of the apartment were engaged in illegal drug trafficking.  It was also reasonable to believe that anyone entering or exiting the premises after the drugs were delivered would be engaged in drug activity and that, following delivery, the drugs might be moved out of the apartment.  The reasonableness of this conclusion is evidenced by the issuance of a warrant to search the apartment for evidence of drug trafficking and "any other person found in [Apartment 6D] or seen exiting, entering, or attempting to enter or exit the above premises." Schowengerdt Decl. Ex. H.[1]  Capt. Fulton delivered the drugs to the apartment where a man identified himself as the addressee, signed for the package, and took it into the apartment.  From this, officers could properly conclude that the address was not an error and the occupants of the apartment were engaged in drug trafficking.  Almost immediately after the delivery of the drugs, police witnessed plaintiff entering the apartment as Mr. Castillo was exiting.  For the above reasons, based on the undisputed facts and drawing all inferences in favor of the plaintiff, the Court finds that plaintiff's arrest was supported by probable cause and his false arrest claim therefore must be dismissed.

    2.  Illegal Search & Seizure

Plaintiff alleges that officers also violated his Fourth Amendment rights by engaging in an illegal search.  See Am. Compl. ¶¶ 64-65.  The Amended Complaint does

---

[1] Police applied for a search warrant at 12:15, but the parties dispute whether the search warrant had been issued at the time police officers arrested plaintiff and entered the apartment.  See Am. Compl. ¶ 27.  The Court notes the issuance of the arrest warrant only to show that a neutral magistrate found probable cause existed to search individuals in or entering the apartment, based solely on the evidence of large quantities of marihuana in a package addressed to Apartment 6D.

not specify whether plaintiff challenges the search of his person or the search of Apartment 6D but, in either case, plaintiff's claim fails as a matter of law.

Police were permitted to search plaintiff following his arrest.  Under the Fourth and Fourteenth Amendments, an arresting officer may, without a warrant, search a person validly arrested.  United States v. Robinson, 414 U.S. 218, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973); Gustafson v. Florida, 414 U.S. 260, 94 S. Ct. 488, 38 L. Ed. 2d 456 (1973). The constitutionality of a search incident to an arrest does not depend on whether there is any indication that the person arrested possesses weapons or evidence.  The fact of a lawful arrest, standing alone, authorizes a search.  Robinson, 414 U.S. at 235.  Because the Court finds officers had probable cause to arrest him, the search of plaintiff was also lawful.

Regarding officers' search of the premises, plaintiff lacks standing to challenge this search.  The Fourth Amendment protects only those people who have a "legitimate expectation of privacy in the invaded space."  Rakas v. Illinois, 439 U.S. 128, 142, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978).  Plaintiff was "a guest invited to stay at the apartment by the tenants" and "not a resident in the apartment."  Am. Compl. ¶¶ 23-24.  Although guests can have legitimate expectations of privacy under certain circumstances, plaintiff has not pled any facts that would validate such expectations.  See United States v. Cody, 434 F. Supp. 2d 157, 165 (S.D.N.Y. 2006) (reviewing the Supreme Court's decisions regarding guests' legitimate expectations of privacy and concluding, "Overnight guests in a person's home share in their hosts' expectation of privacy.  Mere invitees do not."). Consequently, plaintiff fails to state a claim for unlawful search and seizure and this claim must be dismissed.

**B.  Second Claim: Excessive Force**

Plaintiff alleges "[d]uring the arrest of plaintiff, the individual defendants used excessive force against him, by maliciously, gratuitously, and unnecessarily pointing a firearm at him, grabbing plaintiff, and placing excessively tight handcuffs on plaintiff's wrists."  Compl. ¶ 30.  Plaintiff alleges he "was physically injured as a result of the excessive use of force, and suffered numbness and marks to his wrists."  Compl. ¶ 33. "Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." Graham v. Connor, 490 U.S. 386, 394, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).  The Fourth Amendment standard is purely objective: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  Id. at 397.  This standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Id. at 396.  Because the standard is objective reasonableness, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment," id. at 396 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)), and "[n]ot every infliction of pain reaches the infliction of a constitutional violation," Esmont v. City of New York, 371 F. Supp. 2d 202, 214 (E.D.N.Y. 2005).

It is well established that the right to make an arrest accompanies with it the right to use some degree of physical coercion. Graham, 490 U.S. at 396. This frequently involves handcuffing the suspect and "to be effective, handcuffs must be tight enough to prevent the arestee's hands from slipping out." Esmont, 371 F. Supp. 2d at 214. Therefore, "[t]here is a consensus among courts in this circuit that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort." Lynch ex rel. Lynch v. City of Mount Vernon, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008) (citing cases); accord Schy v. Vermont, 2 F. App'x 101, 101–02 (2d Cir. 2001) (painful handcuffing for two-hour period does not violate Constitution); Arnold v. Westchester Cnty, No. 09 Civ. 3727 (JSR) (GWG), 2012 WL 336129, at *9 (S.D.N.Y. Feb. 3, 2012) (dismissing prisoner's claim where officer twisted plaintiff's handcuffs and pulled him down a hallway, causing temporary pain and numbness); Wang v. Vahldieck, No. 09 Civ. 3783 (ARR) (VVP), 2012 WL 92423, at *7 (E.D.N.Y. Jan. 9, 2012) (dismissing excessive force claim of a plaintiff who was "shrieking in pain" from tight handcuffs but where there was "no evidence that the tight handcuffing caused any actual physical injury"); Davis v. Fischer, No. 09 Civ. 6084 (CJS), 2012 WL 177400, at *10 (W.D.N.Y. Jan. 20, 2012) (dismissing excessive force claim that tight handcuffing caused numbness to the plaintiff's hands); Bender v. City of New York, No. 09 Civ. 3286 (BSJ), 2011 WL 4344203, at *6 (S.D.N.Y. Sept. 14, 2011) ("extremely tight" handcuffing for almost fourteen hours that left indentations in the plaintiff's forearms for more than six hours after removal is not excessive force); Barratt v. Joie, No. 96 Civ. 0324 (LTS), 2002 WL 335014, at *7-8 (S.D.N.Y. Mar. 4, 2002) (dismissing plaintiff's excessive force claims that included allegations of numbness and bruising to his wrists from tight handcuffs).

14

The injuries suffered by plaintiff are not comparable to those suffered in any of the cases cited by plaintiff in support of his claim.  See Robinson v. Via, 821 F. 2d 913 (2d Cir. 1987) (officers allegedly threw plaintiff against a car, causing bruising lasting several weeks); Maxwell v. City of New York, 380 F. 3d 106 (2d Cir. 2004) (officers allegedly threw plaintiff head-first into a car, striking her head against a solid partition and causing concussion symptoms); Davis v. City of New York, No. 04 Civ. 3299, 2007 WL 755190, at *2 (E.D.N.Y. Feb. 15, 2007) (officers allegedly kicked plaintiff, a teenage girl, while she was handcuffed and lying on the floor); Breen v. Garrison, 169 F.3d 152 (2d Cir. 1999) (officer allegedly jumped on plaintiff, yanked his head, pushed his face into a table, intentionally tightened handcuffs and spat in plaintiff's face); Golio v. City of White Plains, 459 F. Supp. 2d 259 (S.D.N.Y. 2006) (officer tightly handcuffed plaintiff for two hours until his hands were visibly swollen and red, allegedly causing permanent nerve damage to surgeon's hand).  In comparison, plaintiff's alleged injuries are de minimus and, without more, the use of tight-fitting handcuffs, alone, does not constitute excessive force.

It is also reasonable for officers to draw their weapons when entering a residence they reasonably believe to be used for drug trafficking and reasonable for officers "to sometimes aim that weapon at an individual until an assessment can be made as to whether the individual poses a threat." Anderson v. United States, 107 F. Supp. 2d 191, 199 (E.D.N.Y. 2000); see also United States v. Gaskin, 364 F.3d 438, 457 (2d Cir. 2004) ("[T]his court has frequently observed [that] guns are tools of the narcotics trade, frequently carried by dealers"); Bolden v. Vill. of Monticello, 344 F. Supp. 2d 407, 419 (S.D.N.Y 2004) ("[In] executing a search warrant for drugs . . . it is reasonable for police

officers to enter a residence with guns draw to secure the area and prevent harm to themselves or others." (citing <u>Speights v. City of New York</u>, No. 98 Civ. 4635 (NG), 2001 WL 797982 (E.D.N.Y. June 18, 2001))); <u>Lynch</u>, 567 F. Supp. 2d at 468 ("[O]fficers' decision to draw their weapons while searching the Residence for guns, drugs and a drug dealer was objectively reasonable." (citing <u>Rincon v. City of New York</u>, No. 03 Civ. 8276 (LAP), 2005 WL 646080, at *5 (S.D.N.Y. Mar. 21, 2005))).

### C. Third Claim: First Amendment Retaliation

Plaintiff alleges defendants violated his first amendment rights.  Plaintiff alleges he "exercised free speech during the incident by, among other things, peacefully telling the individual defendants that he had not committed a crime, and that the officers were mistreating plaintiff."  Am. Compl. ¶ 70.  This speech "was a motivating factor in defendants' decision to arrest, use force upon, and prosecute him."  <u>Id.</u> ¶ 71.

In order to survive a motion to dismiss, a claim of retaliation under Section 1983 "must be 'supported by specific and detailed factual allegations,' not stated 'in wholly conclusory terms.'" <u>Friedl v. City of New York</u>, 210 F.3d 79, 85-86 (2d Cir. 2000) (quoting <u>Flaherty v. Coughlin</u>, 713 F.2d 10, 13 (2d Cir. 1983)); <u>accord</u> <u>Eberling v. Town of Tuxedo</u>, No. 05 Civ. 2951 (CLB), 2006 WL 278246, at *2 (S.D.N.Y. Feb. 3, 2006). Plaintiff's claim is entirely specious and there is nothing in the record to indicate plaintiff's speech was a motivating factor in his arrest and prosecution.  Plaintiff's allegation is not only speculative but without merit.  As has been found, the officers had probable cause to arrest him.  Where an officer had probable cause, the Court "will not examine the officer's underlying motive in arresting and charging the plaintiff."  <u>Singer v. Fulton Co. Sheriff</u>, 63 F.3d 110, 120 (2d Cir. 1995) (citing <u>Mozzochi v. Borden</u>, 959

F.2d 1174, 1179 (2d Cir. 1992)); accord Curley, 268 F.3d at 73.  For the above reasons,

plaintiff's third claim must also be dismissed.

### D. Malicious Prosecution

As a preliminary matter, defendants argue plaintiff has abandoned any claim for

malicious prosecution.  Plaintiff's original Complaint specifically alleged claims for

malicious prosecution pursuant to state and federal law.  See Complaint dated June 17,

2010, ¶¶ 63-67 ("Fourth Claim: Malicious Prosecution Under Federal Law"); ¶¶ 68-71

("Fifth Claim: Malicious Prosecution Under State Law").  Defendants argue plaintiff has

abandoned these claims because the Amended Complaint "does not contain the same

enumerated claims for malicious prosecution found in the original complaint."  Defs.'

Mem. at 20.  Although not numerically labeled along with the rest of plaintiff's claims, it

is apparent from the factual allegations in the Amended Complaint that plaintiff has not

abandoned these claims.  See Am. Compl. ¶ 1 ("[Defendants] subjected plaintiff to . . .

malicious prosecution . . . ."); ¶¶ 41-44 (pleading the four elements of a claim for

malicious prosecution).  Nevertheless, plaintiff's claim must be dismissed for the

reasons stated below.

To prevail on federal or state claims of malicious prosecution, the plaintiff must

show: (1) the defendant initiated or continued a criminal proceeding; (2) the proceeding

terminated favorably to the plaintiff; (3) there was no probable cause for the criminal

charge; and (4) the defendant acted maliciously.  Rothstein v. Carriere, 373 F.3d 275,

282 (2d Cir. 2004); Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003).  Here,

plaintiff fails to show there was no probable cause for the criminal charge.  In a

malicious prosecution case, "the relevant probable cause determination is whether there

was probable cause to believe the criminal proceeding could succeed and, hence, should be <u>commenced</u>." <u>Davis v. City of New York</u>, 373 F. Supp. 2d 322, 333 (S.D.N.Y. 2005) (emphasis added) (internal quotation omitted); <u>Murphy v. Lynn</u>, 118 F.3d 938 (2d Cir. 1997) (noting that relevant probable cause for malicious prosecution claim is probable cause "for commencing the proceedings").

Plaintiff was indicted by a Grand Jury on July 19, 2008.  Am. Compl. ¶ 39; Schowengerdt Decl. Ex. K.  Prior to his criminal trial, the State Supreme Court conducted an <u>in camera</u> review of the Grand Jury minutes and, by a Memorandum and Order dated December 3, 2008, determined the evidence presented to the Grand Jury "legally sufficient to establish the offenses charged."  Schowengerdt Decl. Ex. J.  The parties do not dispute that the indictment creates a presumption of probable cause. <u>Manganiello</u>, 612 F.3d at 161; <u>Colon</u>, 60 N.Y.2d at 82 ("Once a suspect has been indicted . . . the law holds that the Grand Jury action creates a presumption of probable cause."); <u>see also</u> <u>Costello v. United States</u>, 350 U.S. 359, 363 (U.S. 1956) ("An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more.").  That presumption can only have been fortified by the Supreme Court's <u>in camera</u> review.  Where, as here, a malicious prosecution claim is commenced after a grand jury indictment, plaintiff can only overcome that presumption by showing "the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." <u>Manganiello</u>, 612 F.3d at 162; <u>see also</u> <u>Colon</u>, 60 N.Y.2d at 82-83.

Plaintiff alleges the defendant officers "pursuant to a conspiracy, falsely and maliciously told the Kings County District Attorney's Office that plaintiff has committed various crimes." Am. Compl. ¶ 38. Plaintiff also alleges that Officer Goodwin provided false testimony before the Grand Jury. Am. Compl. ¶ 39. Plaintiff does not specify in his Amended Complaint what those false statements were or even that he was not guilty of the crimes for which he was prosecuted. These conclusory and generalized allegations are insufficient to overcome the presumption of probable cause created by the indictment.

In addition, plaintiff's own sworn testimony demonstrates his claim is without merit. Plaintiff testified that after officers delivered the package of marihuana, he exited Apartment 6D carrying the package, carried it up to the seventh floor, and threw it onto the landing by the roof. Plaintiff also testified that a surveillance video installed in the hallway accurately recorded his actions. See Schowengerdt Ex. L at 250, 261-263. This is precisely the set of facts that Officer Goodwin provided in the Criminal Complaint that initiated plaintiff's prosecution:

> Deponent [Officer Goodwin] observed, on video surveillance, defendant Rahman exit the location with said package and that defendant Rahman placed said package down on the ground in the staircase immediately next to the above mentioned apartment. The deponent further states that the deponent recovered said package from the stair case [sic] where deponent observed defendant Rahman place said package and that said package contained a quantity of Marihuana that was in excess of ten pounds.

Showengerdt Ex. I. "[I]t has long been recognized that, where there is no dispute as to what facts were relied on to demonstrate probable cause, the existence of probable cause is a question of law for the court." Walczyk , 496 F.3d at 157; see Weyant, 101 F.3d at

852 (2d Cir. 1996) ("The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers.").  Based on the undisputed facts, police and prosecutors had ample reason to believe that plaintiff had committed the crimes with which he was charged and that the criminal proceeding could succeed.  Consequently, plaintiff does not allege "enough facts to state a claim to relief that is plausible on its face," Twombly, 550 U.S. at 547, and defendants' motion is granted as to plaintiff's malicious prosecution claim.

### E.  Fourth Claim: Failure to Supervise

Plaintiff alleges the supervisor defendants are liable to plaintiff because "they supervised subordinate individual defendants concerning above-mentioned unlawful acts against plaintiff, and approved their unlawful acts."  Am. Compl. ¶ 73.  Because the Court has dismissed plaintiff's prior claims against the individual defendants, finding no unlawful acts were committed, plaintiff's claim for failure to supervise must also be dismissed.

### F.  Fifth Claim: Denial of Right to Fair Trial

Plaintiff alleges defendants "created false information likely to influence a jury's decision and forwarded that information to prosecutors, violating plaintiff's constitutional right to a fair trial."  Am. Compl. ¶ 75.  "When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983."  Ricciuti v. New York City Transit Auth., 124 F. 3d 123, 130 (2d

Cir. 1997) (citations omitted); see also Jocks v. Tavernier, 316 F.3d 128, 138 (2d Cir. 2003) (holding that fabrication of evidence by police is actionable under § 1983).

Defendants argue the claim must be dismissed because "even if a plaintiff is able to show that the false information . . . was likely to influence the jury, where a plaintiff has been acquitted of the criminal charges . . . there can be no constitutional violation of a right to a fair trial."  Defs.' Mem. at 28-29.  The cases cited by defendants in support of this argument have either been acknowledged as erroneously decided, see Morse v. Spitzer, No. 7 Civ. 4793 (CBA) (RML), 2011 WL 4625996 (E.D.N.Y. Sept. 30, 2011) (noting the magistrate judge erred and plaintiff's acquittal did not defeat his fair trial claim under Second Circuit law), are from other circuits and not controlling, see Morgan v. Gertz, 116 F.3d 1307, 1310 (10th Cir. 1999), or did not dismiss the claim on the basis of the acquittal alone, see Coakley v. 42nd Pct. Case 458, No. 08 Civ. 6206 (JSR), 2009 WL 3095529 (S.D.N.Y. Aug. 21, 2009).

The Court's own review of the issue indicates that an acquittal does not extinguish a fair trial claim grounded on allegations police or prosecutors knowingly presented false statements or false evidence.  See Morse, 2011 WL 4625996, at *2 (Acquittal does not defeat a fair trial claim where police officers allegedly fabricated evidence); Johnson v. City of New York, No. 06 Civ. 630 (KAM) (ALC), 2010 WL 2771834, at*11 (E.D.N.Y. July 13, 2010) (Acquittal does not extinguish a fair trial claim where police officers allegedly gave false testimony); Zahrey v. City of New York, No. 98 Civ. 4546 (DCP) (JCF), 2009 WL 1024261, at *8 n.15 (S.D.N.Y. Apr. 15, 2009) ("In this Circuit, such a Section 1983 action for violation of the right to 'fair trial' [grounded on false evidence] would apparently lie even if a criminal defendant's charges were

dismissed prior to trial." (citation omitted)); Douglas v. City of New York, 595 F. Supp. 333, 346 n.6 (S.D.N.Y. 2009) ("Nor is a conviction required to bring a § 1983 claim for violation of the right to a fair trial."); Baez v. JetBlue Airways, No. 09 Civ. 596 (CPS) (SMG), 2009 WL 2447990, at *8 (E.D.N.Y. Aug. 3, 2009) ("A plaintiff need not show that she was convicted or that a trial took place" in order to bring a § 1983 claim for violation of the right to a fair trial.); Henry v. City of New York, No. 02 Civ. 4824 (JSM), 2003 WL 22077469, at *4 (S.D.N.Y. Sept. 5, 2003) (rejecting defendants' argument that acquittal extinguished plaintiff's violation of fair trial claim grounded on officers' fabrication of evidence).[2]

Nevertheless, the Court dismisses plaintiff's claim because he has presented only the most conclusory and generalized allegations, failing to specify in what way the statements, information, or testimony were false or even in what material respect the charges against him were false.  See, e.g., Am. Compl. ¶ 38 (Officers "falsely and maliciously told the Kings County District Attorney's Office that plaintiff had committed various crimes."); ¶ 39 (Officer Goodwin "falsely and maliciously told the grand jury that plaintiff had committed various crimes."); ¶ 40 (Officers "provided false statements and information to cause plaintiff to be prosecuted.").  His Amended Complaint simply recites the elements of the claim and is the same ipse dixit.  See, e.g., Ricciuti, 124 F. 3d at 130 (the right to a fair trial is violated when an officer "creates false information likely to influence a jury's decision and forwards that information to prosecutors.").  As the Supreme Court made clear in Twombly, "a plaintiff's obligation to provide the grounds

---

[2] The Court notes that acquittal may extinguish a fair trial claim grounded on other forms of misconduct. See Ambrose v. City of New York, 623 F. Supp. 2d 454, 470 (S.D.N.Y. 2009) (Acquittal extinguishes fair trial claim based on failure to disclose exculpatory Brady material).; Schiavone Const. Co. v. Merola, 679 F. Supp. 64, 66 (S.D.N.Y. 1988) (Acquittal extinguishes fair trial claim based on prejudicial pretrial publicity because acquittal demonstrates jurors were impartial).

of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted).  For the above reasons, plaintiff's fifth claim must also be dismissed.

### G. Conspiracy and Municipal Liability

Plaintiff alleges defendants engaged in a conspiracy to violate his constitutional rights, pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985.  See Am. Compl. ¶¶ 77, 79. Plaintiff also seeks to hold the City of New York liable for the conduct of its employees, pursuant to Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  See Am. Compl. ¶ 81.  These remaining federal claims are predicated on the individual defendants' violation of plaintiff's constitutional rights.  See, e.g., Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999) (An action for conspiracy requires a plaintiff to show, among other things, an overt act taken to inflict an unconstitutional injury); Nagle v. Marron, 663 F.3d 100, 116 (2d Cir. 2011) (Monell violation requires there was a violation of plaintiff's rights).  Because plaintiff has failed to establish any violation of his constitutional rights, these claims also fail and defendants' motion is granted as to plaintiff's sixth, seventh, and eighth claim.

### H. State Law Claims

The Court may decline to exercise supplemental jurisdiction over any and all state law claims of a complaint if the Court has "dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c).  "It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally

decline to exercise pendent jurisdiction over remaining state law claims." Klein & Co. Futures, Inc. v. Bd. of Trade, 464 F.3d 255, 262 (2d Cir. 2006).  Plaintiff's state law claims are therefore dismissed without prejudice in order to allow plaintiff to pursue his state law claims in state court if he so chooses.  See Cave v. East Meadow Union Free Sch. Dist., 514 F.3d 240, 250 (2d Cir. 2008).

## CONCLUSION

For the foregoing reasons, Plaintiff has failed to state a claim as a matter of law and defendants' motion for judgment on the pleadings is granted.   Plaintiff's federal claims are dismissed with prejudice and the Court declines to exercise supplemental jurisdiction over the state law claims.  The Clerk of Court is respectfully directed to close this case.

**SO ORDERED.**

Dated:       Brooklyn, New York
             March 27, 2012


                                        ___/s/_____
                                        I. Leo Glasser
                                        United States District Judge